UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM CLEMENT HAMILTON III, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:14-CV-1848 JAR |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying William Clement Hamilton III's ("Hamilton") application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*.

### I. Background

On August 19, 2011, Hamilton filed an application for SSI benefits under Title XVI of the Act, 42 U.S.C. §§1381, *et seq*., alleging disability beginning February 15, 2011. (Tr. 116-23) The Social Security Administration ("SSA") denied Hamilton's claim on November 30, 2011. (Tr. 61-65) He filed a timely request for a hearing before an administrative law judge ("ALJ") on December 22, 2011. (Tr. 66-69) Following a hearing held on March 15, 2013 (Tr. 27-52), the ALJ issued a written decision on June 7, 2013, upholding the denial of benefits. (Tr. 7-26) Hamilton requested review of the ALJ's decision by the Appeals Council. (Tr. 6) On August 28, 2014, the Appeals Council denied his request for review. (Tr. 1-5) Thus, the decision of the

ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Hamilton filed this appeal on November 3, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. No. 12) Hamilton filed a Brief in Support of his Complaint. (Doc. No. 19) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 20) Hamilton did not file a Reply Brief.

## II. Decision of the ALJ

The ALJ determined that Hamilton had not engaged in substantial gainful activity since August 19, 2011,[1] the alleged onset date of disability. (Tr. 12) The ALJ found Hamilton had the severe impairments of degenerative disc disease of the lumbar spine; status post left L5-S1 microdisectomy with a post-operative diagnosis of left S1 radiculopathy; attention-deficit/hyperactivity disorder, combined type; adjustment disorder with anxiety; learning disorders not otherwise specified; borderline intellectual functioning; and antisocial behavior, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12)

After considering the entire record, the ALJ determined Hamilton had the residual functional capacity ("RFC") to perform sedentary work that includes being limited to the occasional climbing of ramps or stairs; occasional stooping; no climbing of ladders, ropes or scaffolds; no balancing, kneeling, crouching or crawling; no operation of foot controls; avoiding all exposure to extreme vibration, operational control of moving machinery, working at unprotected heights and the use of any hazardous machinery; jobs that do not require written communication; and jobs involving only simple, routine and repetitive tasks. (Tr. 15-19) The

---

[1] In his decision, the ALJ refers to July 12, 2011 as the application date; however, the record shows the actual date to be August 19, 2011. (Tr. 116)

ALJ found Hamilton unable to perform any past relevant work; however, based on his age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Hamilton can perform, including product inspector and production worker. (Tr. 19-20) Thus, the ALJ concluded that Hamilton had not been under a disability since August 19, 2011,[2] the date the application was filed. (Tr. 20)

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on March 15, 2013 and heard testimony from Hamilton and James E. Israel, a vocational expert.

### 1. Hamilton's testimony

Hamilton was 43 years old at the time of the hearing and living with his wife and 19-year old stepson. (Tr. 33, 44) He did not complete the ninth grade and was in special education classes. (Tr. 34-35) Hamilton lost his driver's license in 2006 or 2007 as the result of a DUI. (Tr. 34) In 2001, Hamilton worked for a few months at Rural Advocates for Independent Living taking care of his grandmother. He made sure she ate and drove her around, but he did not prepare meals or help her with household chores or personal care. (Tr. 36-37)

It was Hamilton's testimony that he hasn't worked since July of 2011 when he hurt his back. (Tr. 36, 46) He does not have a related workers compensation claim. Hamilton was incarcerated for a time and is currently on probation. (Tr. 39) While in prison Hamilton participated in GED classes but did not pass the test. (Tr. 40)

It was Hamilton's testimony that he is unable to work due to constant lower back pain; he has trouble bending, sitting and standing for long periods of time. (Tr. 40) Hamilton had back

---

[2] Ibid.

surgery in October which helped with the pain is his left leg but not in his lower back. (Tr. 41-42) He takes Vicodin for the pain, Valium as a muscle relaxant, and Naproxen. His medications help take "the edge" off his pain. (Tr. 41) Side effects include drowsiness and confusion. (Id.) Hamilton further testified he was going to begin injections for his back pain next month. (Id.) He also goes to physical therapy three times a week. (Id.)

Hamilton can walk for ten minutes before the pain starts easing down his leg. (Tr. 42) He can stand in one place for two to three minutes before needing to shift his weight. (Tr. 43) In terms of sitting, Hamilton can sit for ten to fifteen minutes at a time. (Tr. 43, 45) His neurosurgeon instructed him not to lift anything heavier than a gallon of milk for 60 to 90 days following his back surgery. Because he had to have hernia surgery during that time period, Hamilton has not tried to lift any weight. (Id.) He testified to having trouble sleeping, and that he gets about three to four hours of sleep a night. (Tr. 44)

On a typical day, it takes Hamilton 45 minutes to get out of bed and get dressed. (Tr. 45-46) He testified he "pretty much" sits around and watches TV, reads books and plays video games. (Id.) Hamilton's stepson does all of the hard work around the house and they eat TV dinners and microwave food most of the time. (Tr. 45) Hamilton testified if he had a typical job, consisting of five eight-hour days a week for a total of 40 hours, he could actually function for only one to two days of the week. (Tr. 46)

### 2. Testimony of Vocational Expert

Vocational expert James E. Israel characterized Hamilton's past work for Rural Advocates for Independent Living as similar to a domestic service companion, semi-skilled and light with a specific vocational preparation (SVP) of 3, but as actually performed closer to unskilled work. (Tr. 47-49)

The ALJ asked Israel to assume an individual of the claimant's age, education, and work experience who is limited to sedentary work with the following limitations: can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolding; can occasionally stoop, but never kneel, crouch, crawl or balance. The individual must avoid all exposure to extreme vibration, operational control of moving machinery, working at unprotected heights and the use of any hazardous machinery. (Tr. 49-50) The ALJ further limited the individual to occupations that involve only simple, routine, repetitive tasks. (Tr. 50) Israel opined that such an individual would be able to work as an assembler, Dictionary of Occupational Titles (DOT) number 734.687-018. This is unskilled sedentary work with a SVP of 2. (Id.) There are approximately 1, 100 such jobs in the local economy. (Id.) Israel further opined that such an individual would also be able to work as a product inspector, DOT number 669.687-014, with approximately 750 such jobs locally and "multiple 48" nationwide. (Id.) Again, this is light, unskilled work with an SVP of 2. (Id.) Lastly, such an individual would be able to work as another form of production worker which is similar to assembler, DOT number 760.684-030, with 850 jobs locally, also sedentary and unskilled with an SVP of 2. (Id.) According to Israel, in these types of jobs, employers typically tolerate one unexcused or unscheduled absence per month. (Tr. 51)

### B. Medical Records

The ALJ summarized Hamilton's medical records at Tr. 16-18. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has

one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935,

942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V.  Discussion**

In his appeal of the Commissioner's decision, Hamilton raises two issues. First, he alleges the ALJ erred in his RFC determination by rejecting additional limitations supported by the record. (Doc. No. 19 at 17-24) Second, Hamilton challenges the ALJ's credibility determination. (Id. at 24-26)

**Credibility**

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Hamilton's credibility was essential to his determination of other issues, including whether

8

additional limitations were supported by the record. See Shell v. Astrue, 2012 WL 2191282, at *6 (E.D. Mo. May 14, 2012) (citing Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.").

Here, the ALJ acknowledged that Hamilton had sought and received appropriate medical treatment for his allegedly disabling symptoms and noted the numerous office visit notes in the record reflecting regular trips to the doctor to seek relief from those symptoms. (Tr. 18) The ALJ found Hamilton's willingness to undergo surgery and multiple injections certainly suggested his symptoms were genuine. (Id.) In spite of this treatment, however, the ALJ found Hamilton's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible (Tr. 16), and that the record failed to show limitations beyond those cited in his reduced sedentary RFC. (Tr. 18)

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Id. (citing Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Hamilton argues he has significant limitations arising from his physical and mental impairments, including difficulty with comprehension; constant, sharp, shooting back pain; and side effects from his medication. He testified he can walk only about 10 minutes, stand about 3 minutes, and sit about 10 to 15 minutes before needing to shift. Hamilton also testified to difficulty sleeping, getting dressed, getting out of bed in the morning, moving around and bending over. (Doc. No. 19 at 19-20)

In evaluating Hamilton's credibility, the ALJ found Hamilton's daily activities demonstrated he was more capable than alleged. (Tr. 14, 18) He attends to his own personal care, feeds his dogs, prepares meals with the help of his wife and stepson, and shops for food and household supplies. (Tr. 187-189, 833) He is able to pay bills and count change and can handle a savings account and use a checkbook with the help of others. (Tr. 189) Hamilton visits family members at their homes and communicates by phone or computer with friends and family on a daily basis. (Tr. 190) He reported he was independent in his activities of daily living, had a social life with his wife and attended Knights of Columbus meetings. (Tr. 1031-32) An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." Chaney v. Colvin, No. 14-3433, 2016 WL 404058, at *3 (8th Cir. Feb. 3, 2016) (quoting Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)). See also Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with claimant's complaints of disabling pain).

Hamilton's daily activity was just one of several factors the ALJ considered in assessing his credibility. The ALJ also considered the absence of objective medical evidence to support

10

Hamilton's complaints. For instance, Hamilton testified to constant, sharp, shooting back pain, yet he was negative for back pain a few months after wrenching his back in an accident. (Tr. 16, 347, 365) He reported back pain at a severity of 4 out of 10 on April 20, 2011, when he sought treatment for back pain. (Tr. 16, 351, 354) At that time, Hamilton exhibited musculoskeletal tenderness but also showed normal range of motion and no edema. (Tr. 353, 356) Later in April 2011, Hamilton reported his back pain was doing well but had worsened after stepping into a hole. (Tr. 16, 357) An MRI of the lumbar spine performed in May 2011 confirmed the presence of mild to moderate degenerative changes of bilateral facets at L1-2 and L2-3 and moderate to severe degenerative changes of bilateral facets at L4-5. (Tr. 301, 308) On July 4, 2011, Hamilton presented at the emergency room with low back pain and radiating pain in his left leg. It was noted that Hamilton responded well to medication but had none left. (Tr. 16, 373) Scott L. Landry, M.D., observed localized spinal tenderness on July 18, 2011, but also found normal range of motion, intact strength and reflexes in the lower extremities, and no painful range of motion in the hip. (Tr. 320, 471) Hamilton denied taking home medications at that time. (Tr. 320, 471)

During late 2011 and early 2012, Hamilton received emergency room treatment for back pain. (Tr. 485-565, 566-771, 789-99, 800-09) He underwent a series of nerve blocks and epidural steroid injections in 2012. (Tr. 842, 847, 852, 950-52) At a pain management consultation on September 4, 2012, Hamilton showed an antalgic gait with diminished weight bearing and back pain, but also demonstrated the ability to heel and toe walk, 4/5 and 5/5 muscle strength in his lower extremities, no focal deficits, no muscle wasting, and normal muscle tone. (Tr. 834-36)

Hamilton underwent a left L5-S1 micro-discectomy on October 26, 2012. (Tr. 886) It was his testimony that following surgery, the feeling in his left leg returned, but he still had pain in

his lower back. (Tr. 41-42) On November 9, 2012, Hamilton complained of a "twisting/pulling" pain to his incision with swelling. (Tr. 557) Upon examination, his range of motion was full, albeit slow and painful. (Tr. 559) A CT scan of the lumbar spine showed post-operative soft tissue seroma/hematomas; no other abnormality was identified. (Tr. at 562, 564) Hamilton was discharged and prescribed additional pain medication. (Tr. 562) On November 14, 2012, he reported "marked improvement" of his leg pain and had 5/5 motor strength throughout, negative straight leg raising, and normal sensory examination. (Tr. 886-87, 965) The ALJ noted that given Hamilton's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on him by his treating physician; however, a review of the record revealed none. (Tr. 19) See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (lack of significant restrictions imposed by treating physicians supported the ALJ's determination of no disability); Smith v Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (same).

With regard to non-exertional limitations, Hamilton reported no trouble with memory, concentration, understanding, following instructions, or getting along with others. (Tr. 191) During a psychological evaluation performed in April 2013 by State consultative psychologist David Peaco, Ph.D., Hamilton reported few symptoms of depression; on a depression questionnaire no symptoms were reported. (Tr. 1031) Dr. Peaco noted that Hamilton had an unfocused flow of thought, restricted affect and a somewhat depressed mood, but that his orientation was intact and his delayed memory appeared average. (Id.) During testing, Dr. Peaco also observed that Hamilton was cooperative, sufficiently motivated and even established some interpersonal rapport during the testing. (Tr. 1032)

In making his credibility assessment, the ALJ also considered Hamilton's sporadic work history and poor earnings record. (Tr. 18) In particular, Hamilton's earnings record from 1985-

2011 shows he never earned more than $7,400 in any one year. (Tr. 129) While acknowledging that at times during this period Hamilton was incarcerated, the ALJ noted Hamilton still worked only sporadically prior to his alleged disability onset date in the years when he was not incarcerated, raising a question as to whether his continuing unemployment was actually due to medical impairments. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability.").

The ALJ further considered the fact that Hamilton reported in April 2013 that he had not taken any pain medication in the prior month. This suggested to the ALJ that Hamilton's impairments were not as limiting as he alleged. A claimant who fails to treat a remedial condition without good reason is not entitled to benefits. 20 C.F.R. § 404.1530 (1990).

In addition, the ALJ found Hamilton's past incarcerations for alcohol-related offenses, check fraud and burglary did not bolster his credibility. (Tr. 19) See Simmons v. Massanari, 264 F.3d 751, 756 (8th Cir. 2001) (where the claimant had gone to prison for forgery, the ALJ properly considered that evidence in evaluating the claimant's credibility).

In sum, the Court finds the ALJ considered Hamilton's subjective complaints on the basis of the entire record and set out a number of inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Hamilton's subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski, 739 F.2d at 1322.

**RFC**

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir.

13

2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Voegtlin v. Colvin, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski, 739 F.2d at 1322; 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

The Court finds the ALJ's assessment of Hamilton's RFC is based upon and consistent with all of the relevant evidence. A review of the record demonstrates that Hamilton has some sedentary level restrictions in his functioning and ability to perform work related activities; however, he did not carry his burden to prove a more restrictive RFC determination. See Pearsall, 274 F.3d at 1217.

First, the ALJ considered Hamilton's credibility, as discussed above, and found him not fully credible. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004); Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). The ALJ only included Hamilton's credible limitations in his RFC. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

Second, the ALJ considered Hamilton's medical treatment records and incorporated in the RFC those limitations which he found to be consistent with those medical records. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As discussed above in regard to Hamilton's

credibility, the ALJ considered that following a micro-discectomy on October 26, 2012, Hamilton reported "marked improvement" in his leg pain and his motor strength was 5/5 throughout examination. (Tr. 965) Hamilton's sensory exam was intact to touch in all extremities and his straight leg raise and crossed leg raise was negative. (Id.) In addition, Hamilton's use of pain medication was intermittent. As recently as April 2013, Hamilton reported he had not taken any pain medication in the past month. (Tr. 1030) See Baker v. Barnhart, 457 F.3d 882, 893-94 (8th Cir. 2006) (citing Curran–Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003) ("[E]vidence that [the claimant] did not regularly require prescription medication or physical therapy could create doubt in a reasonable adjudicator's mind with regard to her testimony about the extent of her pain.").

The ALJ accommodated Hamilton's back and lower extremity pain by limiting him to only occasional climbing, stooping, kneeling, crouching, and crawling. See Lauer, 245 F.3d at 704. The ALJ also accounted for Hamilton's non-exertional (mental) impairments, and in particular his moderate difficulties with concentration, persistence or pace (Tr. 14), by limiting him to jobs that do not require written communication and involve only simple, routine and repetitive tasks.

After determining Hamilton's RFC, the ALJ found, based on the testimony of a vocational expert, that Hamilton could not perform his past relevant work, but that there was other work which existed in substantial numbers in the national economy which he could perform, considering his age, education, work experience, and RFC. An ALJ posing a hypothetical to a vocational expert is not required to include all of a claimant's limitations, but only those which he finds credible. See e.g., Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those

impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006); Hunt v. Massanari, 250 F .3d 622, 625 (8th Cir. 2001); Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005). As the Court has found the ALJ's RFC determination is based on substantial evidence and as the ALJ posed a hypothetical to the vocational expert which included this RFC, the Court finds the ALJ properly relied on the vocational expert's testimony that there was work which Hamilton could perform and that the ALJ's decision, in this regard, is based on substantial evidence. As such, the ALJ's determination that Hamilton is not disabled is based on substantial evidence and consistent with the regulations and case law. See Goff, 421 F.3d at 790.

### VI.  Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 14th day of March, 2016.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**